HURD *v.* SNOW.

(*Circuit Court, D. Connecticut.* June 19, 1888.)

PATENTS FOR INVENTIONS — PATENTABILITY — INVENTION — PACKING ICE-CREAM FOR TRANSPORTATION.

Letters patent No. 113,239, dated April 4, 1871 issued to Ignazio Allegretti, for a new article of manufacture and commerce, consisting of blocks of ice-cream or water-ice put up, for purposes of convenient transportation, in metallic moulds, which were first to be subjected to the superfreezing process, to make the cream or water-ice harder, and then placed in loosely-fitting refrigerator paper boxes, the superfreezing process, both in moulds and in mass, not being new, is merely for putting a known article into convenient receptacles, and void for want of invention.

In Equity.

Bill by William H. Hurd against Charles P. Snow for infringement of letters patent.

*John J. Jennings*, for plaintiff.

*Charles T. Polhamus*, for defendant.

SHIPMAN, J. This is a bill in equity, based upon the infringement of letters patent No. 113,239, dated April 4, 1871, to Ignazio Allegretti, for an improved ice-cream or water-ice; the improvement consisting in the method by which it is put up or packed and prepared for preservation and convenient use after a lapse of time. The object of his invention was "to pack and serve ice-cream or water-ices in boxes of convenient size, to be carried in the hand," and so "put up" or prepared in these boxes that they, with their contents, can be kept in stock, or that the contents can, when the boxes are sold, endure transportation, and be kept firm and solid for a considerable period of time. In the specification of the patent the invention is described as follows:

"When pure water is frozen by the application thereto of either artificial or natural cold, the ice produced therefrom is susceptible of absorbing a large amount of caloric before returning to the fluid state, if said ice has been submitted for a certain time to a degree of cold more intense than the point at which water does freeze, viz., 32 deg.; and it will be found that when water is mixed or combined with vegetable or animal substances in the shape of sirups, starch, milk, gelatine, essential oils, etc., the proportion thereof may be so regulated that the mixture will acquire a certain degree of consistence when lowered in temperature, and that at a certain point the lowering of the temperature will not affect any more the consistence or solidity of the mass, although the said substance may be made to absorb a large supply of cold, which is, as it were, stored away in its mass." "The ice-cream or water-ice to be packed and served up by my improved method is first frozen in any ordinary known manner. It is then put up in metallic moulds, preferably of parallelopipedic form, but of any form, if desired. The metallic mould containing the ice-cream is then placed in a dry atmosphere, kept at a very low temperature, (in some cases I keep it as low as 30 deg. below zero;) and there it is kept long enough for the whole mass to absorb and be reduced to the low temperature. Meanwhile, I prepare boxes of non-conductor of heat material, such as open, porous pasteboard, of the shape of, but slightly larger than, the block of ice-cream, (see letter, C, in drawing;) and I place the boxes also in a cold, dry atmosphere for a certain time. The block of ice-cream is taken out of the mould, immediately wrapped in a piece of paper, and placed in the refrigerated pasteboard box; the laps of the paper, B, being folded over, and, if desired, the spoon, mentioned elsewhere, placed thereon; the lid is put on, and the cream is ready to be delivered or served up; or it may be replaced in a cold, dry-air refrigerator, and there kept for any length of time without losing any of its qualities. If the proportions of foreign substance to water have been well preserved in the mixture, the consistency of the mass will be just right for being served up at any degree of cold. It may be served below 30 deg. The cream or water-ice put up in this manner will remain firm and solid for a length of time lasting from one to four hours, according to the state of the weather."

The claim of the patent is as follows:

"As a new article of manufacture and commerce, ice-creams or water-ices put up in the manner herein specified, and kept for sale ready for use in rations, as it were, substantially as herein specified."

The sale of the patented article by the defendant in New Haven, in the territory within and for which the plaintiff was the exclusive owner of the patent, and the purchase by the defendant of said articles from a person other than the plaintiff, for sale in New Haven, with knowledge on

the part of the seller of such intended sale in New Haven, are clearly proved.

The important question in the case is that of patentable invention, in view of the state of the art relating to the manufacture of ice-cream and similar confections. Testimony in regard to the state of the art has now, for the first time, been presented. It appears that after ice-cream has been frozen by the ordinary method, and has become a semi-hard mass, it is taken from the freezer, and placed in metallic moulds, which are made in two parts, opening with a hinge. The moulds are then closed, and packed in ice in a tub; and, when the article is to be used, are opened, and the ice-cream is placed upon the table. By this method the frozen article can be transported with safety to a distance. Superfreezing has also been practiced, which is, after the mixture has been frozen by the ordinary process to the usual consistency, that is, of well-prepared mortar, the mass is placed in refrigerators or other vessels, and the freezing process continued, by means of salt and ice, until it becomes so hard and cold that it can be kept for a considerable period of time. By the process as detailed in the patent, after the ice-cream has been frozen in the usual way, it is placed in metallic moulds, and the cream in the separate moulds is then subjected to the super-freezing process. When the portion of cream in the mould has become, by reason of this subjection to a cold temperature, hard and cold enough, it is placed in a loosely-fitting paper box, which has also been made cold, and can be carried in this receptacle for a considerable period without melting, or can be stored in a cold, dry refrigerator with safety.

The patented thing is a new article of manufacture, and not a new process of manufacture, because the superfreezing process, either in moulds or in mass, was well known. There was nothing new in taking the cream out of the freezer, and putting it into metallic moulds for further freezing. Neither was the method of superfreezing by the metallic moulds new. Inasmuch as it is obvious that there was no invention in the means by which the cream is brought into the state in which it resists heat, and the invention is plainly made, by the claim, to consist in this well-known article "put up" in small quantities, in cold boxes, made of paper or other material which is a non-conductor of heat, the patented thing seems to be superfrozen ice-cream, contained, for purposes of preservation, in a small, cold box of paper or like material. I can see no invention in putting a frozen brick of ice-cream into a box for purposes of convenient transportation, and none in subdividing the "brick" into small quantities which are adapted to the needs of a small number of consumers, and putting each ration into a separate box. It is simply putting a well-known article into convenient receptacles for convenient transportation and use. The use of the boxes, and the subdivision of the cream into boxes, are the mechanical means by which the article is conveniently handled and transported by the purchaser, and is made commercially popular, merchantable, and successful. It is "a new article of commerce," but is not, therefore, "a new article which, as such, is patentable." *Glue Co.* v. *Upton,* 97 U. S. 3. If the superfrozen cream

had been a novelty, or if the means by which the cream was superfrozen had been new, and the placing it in metallic moulds for the purpose of additional freezing had been a new idea, the patent would have had a very different foundation; but the patentee would not claim that his cream, before it was placed in the boxes, was a new and patentable article. The patentability attaches when the separate portion of cream is placed in its refrigerated box for transportation or preservation against heat, and there seems to be no more invention in this method of furnishing the article to the consumers than there is in any selection of attractive and convenient forms by which an article is made salable, and is brought within the reach of the public. *Glue Co.* v. *Upton, supra.* The lack of the element of invention is fatal to the validity of the patent. The bill is dismissed.